**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - -X
DIEGO FELIX,

              Petitioner,

  -against-

UNITED STATES OF AMERICA,

              Respondent.
- - - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,

  -against-

DIEGO FELIX,

              Defendant.
- - - - - - - - - - - - - - - - -X

**OPINION AND ORDER**

05 Civ. 3925(JFK)

01 Cr. 984(JFK)

**JOHN F. KEENAN, United States District Judge**:

      Defendant-Petitioner Diego Felix ("Felix"), pro se, has submitted motions for immediate deportation and for appointment of counsel to assist him with his petition pursuant to 28 U.S.C. § 2255. He also has filed a pro se § 2255 petition. For the reasons that follow, Felix's motion for early deportation is dismissed, his motion for appointment of counsel is denied, and his § 2255 petition is summarily dismissed.

## Background

      Felix was charged in two counts of a superseding indictment filed on December 11, 2001. Count One charged Felix and others with narcotics conspiracy in violation of 21 U.S.C. § 846. Count Two charged Felix alone with illegal re-entry into

the United States after deportation in violation of 8 U.S.C. § 1326. On January 10, 2003, Felix pled guilty to both counts. On July 30, 2003, the Court sentenced Felix to a term of 120 months, plus five years of supervised release. By Mandate dated July 28, 2004, the Court of Appeals for the Second Circuit granted the Government's motion for summary affirmance.

Felix moves pro se for immediate deportation as a non-violent offender, pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(h)(2)(A). The Government opposes the motion. The Government also opposes Felix's motion for the appointment of CJA counsel on the grounds that Felix's § 2255 motion has no likelihood of success. The Government contends that Felix's plea agreement contains an express waiver of the right to collaterally attack the conviction or sentence, and that this provision was triggered by the Court's mandatory minimum sentence of 120 months' imprisonment.

### Motion for Immediate Deportation (01 Cr. 984)

The Attorney General is prohibited by statute from removing an alien sentenced to imprisonment until he or she is released. 8 U.S.C. § 1231(a)(4)(A). An exception exists for cases involving non-violent offenders, but the decision to remove such an alien prior to the expiration of his prison term "is a matter solely within the discretion of the Attorney General." Thye v. United States, 109 F.3d 127, 128 (2d Cir. 1997). This

2

exception is not subject to compulsion through a private cause of action, 8 U.S.C. § 1231(a)(4)(D), and the Court does not have jurisdiction to review the Attorney General's decision as to whether approval is appropriate in this instance. 8 U.S.C. § 1252(a)(2)(B)(ii). The motion for deportation is dismissed. Case No. 01 Cr. 984 remains closed.

### Motion for Appointment of Counsel and § 2255 Petition (05 Civ. 3925)

Felix's motion seeks the appointment of CJA counsel to assist him in preparing his § 2255 petition. While this motion was pending, Felix filed the § 2255 petition pro se. Mindful that pro se submissions must be construed broadly, McDonald v Head Criminal Court Supervisor Officer, 850 F.2d 121, 124 (2d Cir. 1988), the Court will presume that Felix now seeks appointment of counsel for the remainder of the § 2255 process.

Prisoners have no constitutional right to counsel when collaterally attacking their convictions. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). The Court, however, has discretion to appoint CJA counsel where the petitioner is "financially unable to obtain legal representation and the appointment serves the interests of justice." 18 U.S.C. § 3006A. This discretion is not unfettered, and "[i]n deciding whether to appoint counsel, . . . the district judge should first determine whether the indigent's position seems likely to be of substance." Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986).

Felix pled guilty before this Court pursuant to a written plea agreement. The agreement explicitly states that "the defendant will neither appeal, nor otherwise litigate under Title 28, United States Code, Section 2255, any sentence at or below the Stipulated Guidelines Sentence of 120 months." (Plea Agmt. at 5). It is settled law that "[t]here is no general bar to a waiver of collateral attack rights in a plea agreement." Frederick v. Warden, Lewisburg Corr. Fac., 308 F.3d 192, 195 (2d Cir. 2002). An exception exists, however, where the petitioner attacks "the validity of the process by which the waiver has been procured." Id. at 195.

In his § 2255 petition, Felix argues that he "was persuaded to plead guilty." (Felix Mem. ¶ 11). He protests his innocence, claiming that "[t]here was no 'agreement' by or between Petitioner and any of his alleged 'co-conspirators.'" (Id. ¶ 22). He also contends that he was "'duped' into pleading guilty to a drug quantity (70 kilograms of cocaine) which he was lead [sic] to understand was considerably better than that charged in the Indictment." (Id. ¶ 25). He means that he relied on the bottom of the Sentencing Guidelines range (87 months) without taking into account the mandatory minimum under the statute (120 months). Felix argues that his counsel was ineffective for (i) not fully investigating the case, (Id. ¶¶ 34-43), and (ii) not securing a plea agreement which did not contain

4

a mandatory minimum sentence, (Id. ¶¶ 44-47). He insists that but for his counsel's errors, he would not have pled guilty and would have gone to trial. (Id. ¶¶ 48-54). Finally, Felix alleges "selective prosecution" and that the Government "merely made up" the narcotics conspiracy charge. (Id. ¶ 61).

These arguments have no merit. Felix waived the right to bring a collateral attack, and the only way around the waiver is an attack on its procural; i.e., the plea agreement and the plea proceeding. See Frederick v. Warden, Lewisburg Corr. Fac., 308 F.3d 192, 195 (2d Cir. 2002). The Court therefore examines only Felix's contention that his counsel was ineffective with respect to the plea, and but for the ineffectiveness, Felix would not have pled guilty. Such an argument may be made for the first time on collateral attack. See Massaro v. United States, 538 U.S. 500, 504 (2003).

A.  Felix's Competence to Plead Guilty

In testing Felix's argument, the Court examines the minutes of his plea proceeding on January 10, 2003. At the hearing, the Court confirmed that Felix could read, write and speak English. (Tr. at 3).[1] Felix stated that he had seen a psychiatrist "in the past" but he could not recall the time. (Id. at 4). The Court thereupon asked Mr. Gerzog, Felix's counsel,

---

[1] "Tr." refers to the transcript of the plea proceeding on January 10, 2003.

whether he had any question as to Felix's competency to plead guilty. (Id.). Mr. Gerzog responded in the negative. (Id.). Felix revealed that he had been hospitalized for an alcoholism or narcotics addition 22 months before the plea hearing. (Id. at 4-5). The Court then asked Felix whether he was "feeling alright," other than being nervous, to which Felix responded: "I'm just feeling kind of nervous, that's it." (Id.). The Court asked again: "Okay, But you are feeling alright other than that." (Id.). Felix responded: "Yeah, I'm alright." (Id.). Finally, the Court asked Felix if he was under the influence of drugs or alcohol, which would affect his ability to understand what he was doing. (Id.). Felix responded: "No, I haven't take no drugs." (Id.), which, despite the double negative, surely meant "no."

B. Felix's Understanding of the Plea Agreement

Felix stated that he understood (i) the charges in the Indictment (Tr. at 5), (ii) that his plea meant that there would be no trial (Id. at 7); and (iii) that the Court could sentence him as though a jury had convicted him. (Id. at 8). With respect to Count One, the narcotics count, the Court asked:

> THE COURT: Alright. Now on your plea of guilty to Count 1 the maximum possible sentence is up to life in prison. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And there is a mandatory minimum on Count 1 of ten years. Do you understand that?
>
> THE DEFENDANT: Yes.

6

(Tr. at 8). This colloquy demonstrates Felix's clear understanding that the minimum sentence on Count One of the indictment was 120 months, or 10 years.

The Court then asked Felix if Mr. Gerzog had explained the plea agreement to him. (Tr. at 11). Felix answered: "Yes, he did." (Id.). When the Court asked Felix if he understood the plea agreement, he responded that there were "a couple of things" he didn't agree with, but that he was "pleading guilty with an explanation to the plea agreement." (Id.). When the Court queried Felix on his disagreement, the following colloquy ensued:

> THE DEFENDANT: The knowledge that the government specified in there, saying that I have knowledge that it was a transaction of 70 kilo taking place, when in reality I didn't have no knowledge of that. I never seen even two kilos in my life altogether. That's the information I got right there. And it turns out that the 70 kilos they had in their possession turned out to be all baking soda, I didn't have no knowledge of that myself.
>
> THE COURT: Did you know or have good reason to believe that there was more than five kilos?
>
> MR. GERZOG: Your Honor, what we are prepared to say about that, the fact of the matter is that before entering into the transaction, Mr. Felix didn't know how much cocaine was involved. However, we are prepared to concede that the government could prove beyond a reasonable doubt at trial that the conspiracy itself was to possess with intent to distribute more than five kilograms of cocaine, and that that fact was reasonably foreseeable to Mr. Felix.

(Id. at 12). Felix calls this passage "troubling" and argues that it proves his argument that the proceedings "were completely done in order to appease the government." (§ 2255 Pet. ¶ 45).

7

What Felix ignores is the continuation of the conversation after Mr. Gerzog finished speaking:

> THE COURT: Alright Mr. Gerzog. Did you hear what you[r] lawyer said?
>
> THE DEFENDANT: Yes. I just heard what he said.
>
> THE COURT: Do you agree with that?
>
> THE DEFENDANT: I agreed what he said just until now, yeah.
>
> THE COURT: When you say until now, do you agree now, today?
>
> THE DEFENDANT: Yeah.

(Tr. at 12-13). Felix therefore agreed with his counsel that the Government could prove beyond a reasonable doubt that the conspiracy was to possess or distribute more than 5 kilograms of cocaine, and that Felix could reasonably foresee this fact. This was sufficient to trigger the ten-year mandatory minimum.

The Court also made sure that the defendant understood that he could not appeal this sentence, and Felix responded "Yes, your Honor." (Id. at 14).

C. Whether Felix Was Coerced Into the Plea

As for Felix's contention that he was somehow "persuaded" to plead guilty, the following colloquy debunks that contention:

> THE COURT: Now, I know you hope for leniency, but that's not what I am going to ask you now. Have you been induced to offer to plead guilty by reason of any promise or statement by anybody to the effect that you were going to get a break, in other words, that you were going to

8

get special treatment or leniency because you were pleading guilty?

THE DEFENDANT: No.

THE COURT: Okay. Are you offering to plead guilty of your own free will?

THE DEFENDANT: Yes, your Honor.

THE COURT: Have you been induced to offer to plead guilty by any fear, or pressure, or threat, or force or anything like that?

THE DEFENDANT: None whatsoever.

(Tr. at 16).

Later in the hearing, when Felix allocuted to his offense conduct on the narcotics conspiracy charge, the Court made it clear that Felix was not being forced to plead guilty:

THE DEFENDANT: [Felize, a co-conspirator] wanted me to bring somebody with a driver's license to drive a car because he was trashed and he didn't have no driver's license.

THE COURT: That had to do with narcotics?

THE DEFENDANT: Yes, obviously.

THE COURT: You see, I don't know that. You have to tell me.

THE DEFENDANT: It turned out to be that he had something in that car that wasn't legal.

THE COURT: Well, that didn't surprise you, did it?

THE DEFENDANT: It surprised me.

THE COURT: It did?

THE DEFENDANT: It did surprise me.

9

> THE COURT: I don't know how I'm going to take this plea then. If you didn't think it involved narcotics, how can I take the plea? I told you, I don't want to talk you into it, I don't want to talk you out of it. It's not my --
>
> THE DEFENDANT: I thought it involved narcotics because he offered Victor Estrella [another co-conspirator] $10,000 to drive that car, so.
>
> THE COURT: So you knew pretty much?
>
> THE DEFENDANT: I figured there was something wrong, yes.
>
> THE COURT: Alright. And around the 21st of June did you, Felize and Estrella meet out in Queens about the narcotics?
>
> THE DEFENDANT: Yes, we did.
>
> THE COURT: And it turned out the narcotics was over five kilograms, right?
>
> THE DEFENDANT: Yes, I know it's wrong.

(Tr. at 18-19). Here, the Court informed Felix quite clearly that he was not being forced into the plea. Nevertheless, Felix confirmed that he could reasonably foresee that narcotics were involved in the matter of the car, and that he met with the two co-defendants, Felize and Estrella, about the cocaine, which was more than five kilograms.

The foregoing excerpts from the plea hearing establish that Felix was fully aware of his situation and able to give more than "yes/no" responses to the Court's questions. There is no indication that he was duped into the plea, or that he did not understand the terms of the plea agreement (which included a waiver of collateral attack) and the mandatory minimum sentence

of ten years.  Felix's arguments about 70 kilograms of cocaine are beside the point.  Once he admitted to a quantity of 5 grams or more, the ten-year mandatory minimum became applicable.  See 21 U.S.C. § 841(b)(1)(A).

Felix has not succeeded in making a showing under Hodges that his position is "likely of substance."  He has not shown ineffective assistance of counsel in the procural of the collateral attack waiver in his plea agreement, as set out in Strickland v. Washington, 466 U.S. 668, 688, 694 (1984) ((1) "counsel's representation fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").  Mr. Gerzog obviously negotiated the plea agreement on Felix's behalf, and Felix entered into it with his eyes wide open.  He said so repeatedly at the plea hearing.  The terms of the agreement govern; collateral attack is not permissible.  There is no issue of "selective prosecution" either.  If the Government "selected" Felix for prosecution, it was because he violated the law.

Based on the foregoing findings and the prior proceedings in this case, the Court concludes that Felix's § 2255 petition plainly fails on its face.  Pursuant to Hodges, the Court declines to appoint CJA counsel to assist Felix with the petition.  Moreover, because the petition plainly fails, the

Court need not order the Government to submit opposition papers. See Rule 4(b) of the Rules Governing Habeas Petitions for the U.S. Dist. Cts.; Armienti v. United States, 234 F.3d 820, 822-23 (2d Cir. 2000) ("If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal."). Felix's § 2255 petition is summarily dismissed.

## CONCLUSION

For the foregoing reasons, Felix's motion for immediate deportation is dismissed, his motion for appointment of counsel is denied, and his petition pursuant to 28 U.S.C. § 2255 is summarily dismissed. The Clerk is directed to close Case No. 05 Civ. 3925 and remove it from the Court's active docket.

SO ORDERED.

Dated: New York, New York
August 29, 2005

JOHN F. KEENAN
United States District Judge